IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MAX C. KANT, Husband and Wife; and ANN M. KANT, Husband and Wife,<br><br>Plaintiffs,<br><br>vs.<br><br>THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA,<br><br>Defendant. | 8:18CV573<br><br>TEMPORARY RESTRAINING/ PRELIMINARY INJUNCTION ORDER |

This matter is before the Court on the motion for a temporary restraining/preliminary injunction order pursuant to Fed. R. Civ. P. 65 filed by the plaintiffs in this case. Filing No. 6. Briefs and evidence were filed in support of the motion. Filing Nos. 20, 21, 22, 25 and 26. This case was originally filed in the Douglas County District Court in Nebraska.[1] Security National Bank of Sioux City, Iowa (hereinafter the Bank) removed the case to this Court. The Bank has filed an opposition and briefs and evidence in support of its arguments. Filing Nos. 17, 18, 19 and 24. Plaintiffs move to enjoin the sale by the Bank of an 8-acre and 80-acre parcel of real estate executed and recorded under Deeds of Trust.

**BACKGROUND**

Plaintiffs were in the cattle business. The plaintiffs entered into various loan agreements over the course of time with the Bank. Plaintiffs had multiple other customers

---

[1] Also pending is a case in Madison County, Nebraska against plaintiffs regarding collections. Additionally, there is a declaratory judgment action in the Northern District of Iowa federal court concerning the 1.4 million being held by the Bank. There is also a collection case filed against the Kants by Mark Mueller, one of the Banks customers.

involved in the sale of cattle.  On several occasions, plaintiffs needed additional money and took out loans from the Bank.  The Bank contends that during much of this time, plaintiffs were operating a Ponzi scheme and had been forward contracting since 2010.  Max Kant admits that he sold contract cattle ahead of purchasing the cattle.  Filing No. 19, Ex. 1, p. Def. 15-17.  The Bank alleges that plaintiffs fraudulently falsified records,[2] showing greater numbers of cattle and sales than existed.  Then, plaintiffs would allegedly take the fresh loan money and pay off old debt without the number of cattle represented to the Bank and other investors.

At one point, plaintiffs entered into a contract with creditors Clark and Andrea Johnson.  The purpose of this contract was to help the Johnsons pay down its debt with the Bank and to then permit the Kants to borrow additional money from the Bank.  Filing No. 19, Ex. 14, pp. 58-59.  At that time the plaintiffs admitted they owed money to the Johnsons and other customers and investors.[3]  The plaintiffs entered into an agreement to make monthly payments to the Johnsons and pledged both parcels of land to the Johnsons.[4]  These contracts included hypothecation agreements, deeds of trust and assignments of rent.  There was a deed of trust for both parcels of land.  They were pledged to the Johnsons for the Johnson's debts.  The Bank alleges that, thereafter, the plaintiffs were short several thousand head of cattle, committed fraud and then defaulted.  The Bank then filed a foreclosure action against the plaintiffs.  The sale was set for December 23, 2018.

---

[2] This allegation deals with a Cargill purchase contract that had arguably been forged by Max Kant.  *See* Ex. 21, Filing No. 19, at 122 (testifying that Ex. 1 was modified and that Cargill had no record of Ex. 1, Filing No. 19 at 123).
[3] The Johnson debt is exclusive of any debt owed by the plaintiffs to the Bank.
[4] The debt was paid down from 3.5 million to approximately 1.7 million.

Plaintiffs now for the first time in six years, contend that the agreements with the Johnsons are invalid. Filing Nos. 21 and 22, Ex. 2, Aff. of Ann Kant. Mrs. Kant contends she was threatened with criminal prosecution as well as coerced. Plaintiffs contend they were coerced into executing the documents in 2013 by Bank officers Roger Klingensmith and Darren Tooley. Plaintiffs assert that the documents executed in June of 2013 are defective. First, they argue that the legal description is incorrect in the Deed of Trust; and second, they contend that the language identifying the parties is mixed up. Plaintiffs also contend that they made $28,000 payments each month from May of 2013 through August of 2017. Essentially, the Kants paid Johnson's debt because of the forward contracting. They ask this Court to maintain the status quo and grant the temporary restraining order.

Plaintiffs also contend that the documents were unfairly drafted against them. However, the Bank has an affidavit indicating that the relevant documents between plaintiffs and the Johnsons were prepared by counsel for the plaintiffs/Johnsons. Filing No. 19, pp. 5-13; 65-73, Affidavits of Roger Klingensmith and Darren Tooley of Security National Bank. Plaintiffs also contend that there are caps on the amount they owe up to $625,000 and $250,000. They argue the contracts are ambiguous as to the dollar amounts.

The property in question was originally farmed by the Kants. The Johnsons had the feedlot. The feedlot was valued at about $1.6 million. The feedlot closed in 2017, was liquidated, and the cattle replevined. The Kants owe $1.7 million dollars to the Bank.[5] Further, the Bank is holding $1.5 million, which it may be required to pay out to various

---

[5] The feedlot debt is unrelated to the debt on the 8 and 80 acres. However, the feedlot was pledged by the Johnsons for their debt to the Bank. It was insufficient to cover the amount owed. Thus, the Kants then pledged the 8 and 80 acres to the Johnsons for the Johnsons' debt to the Bank.

feedlot customers.[6]  The value of the 8-acre lot, with a house, is approximately $200,000 to $250,000.  The value of the 80 acres is approximately $500,000.

At this point the Kants and the Johnsons each owe $1.7 million dollars to the Bank (less any money that may or may not be deducted from the declaratory judgment action).  Had the December sale proceeded, the proceeds would have been applied to Johnson's debt and to the debts of other customers.

**ANALYSIS**

When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).  A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant.  *Roudachevski*, 648 F.3d at 701, 705 (8th Cir. 2011).  No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, sufficient grounds to deny a preliminary injunction.  *See Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996); *see also Modern Computer Sys., Inc. v. Modern Banking Sys.*, Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc).  The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant

---

[6] This issue is filed in the form of a declaratory judgment is currently in the Northern District of Iowa federal court.

substantially the relief it would obtain after a trial on the merits. *Calvin Klein Cosmetics Corp. v. Lenox Lab.*, 815 F.2d 500, 503 (8th Cir. 1987).

Success on the merits has been referred to as the most important of the four factors, but it is insufficient on its own. *Roudachevski*, 648 F.3d at 706. Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm. *Id.* The threat of irreparable harm requirement is a necessity in proving the propriety of preliminary injunctive relief. *Id.* To succeed in demonstrating a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996)).

1. **Irreparable injury**

"'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)). Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm. *Id.* The Court finds that there is no irreparable injury if it denies the motion for a temporary injunction. Money damages are available to the plaintiffs for any damages that might be due them.

2. **Balance of harms**

Had the plaintiffs made a showing of irreparable harm, it does not automatically mandate a ruling in the plaintiffs' favor; the court must also balance the harm to the defendant in granting the injunction. *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630-31 (8th Cir.

5

1991). Plaintiffs contend their property is unique in nature. However, the Bank is currently carrying a $1.7 million-dollar debt with interest at 4.5% for Johnson; the interest continues to run. Thus, the Bank and the Johnsons also have harm if their debt is not paid and the interest continues to accrue. The Court finds this factor also leans in favor of the Bank.

### 3. Probable success on the merits

Defendants have shown a high probability of success on the merits, and thus this factor weighs against the plaintiffs. The Bank first argues there was no coercion or duress. The Court agrees. From March through May, the plaintiffs and Johnsons negotiated this deal. *See* Filing No. 19, Ex. 14 at 58 and 75 (agreement between plaintiffs and Johnsons). The Deeds of Trust were between plaintiffs and Johnson. The specific Bank documents were not included until June 2013. There are no allegations that the Kant/Johnson Agreement was entered under duress. They negotiated this agreement for 3 months. All relevant Bank documents were not signed until June. Via the hypothecation agreement, the Johnsons turned over their rights to the Bank. Mr. Johnson's affidavit makes clear that his lawyer drafted these documents, not the Bank's attorneys. Filing No. 19, Ex. 24, p. 135, ¶ 4. The Bank documents do appear to be the end of the process.

Next, the Bank argues that the Deeds of Trust are valid and enforceable. It appears that is accurate, although the Court agrees there appear to be insignificant scrivener errors. However, these errors can be reformed by the parties. *Newton v. Brown*, 386 N.W.2d 424, 431 (Neb. 1986).

The Court concludes that this factor likewise leans in favor of the Bank.

### 4. The public interest

The Bank argues that it went out of its way to in 2013 to help the plaintiffs and their customers. If it cannot enforce its rights, argues the Bank, it chills its interest to help customers who are upside down on their loans. It would mean in most instances the banks would be better off cutting losses than trying to work with people. The Court finds that this factor weighs in favor of the Bank.

### CONCLUSION

Applying the *Dataphase* factors, the Court concludes that the injunction should not remain in effect.

THEREFORE, IT IS ORDERED THAT plaintiffs' motion for a temporary restraining order/preliminary injunction, [Filing No. 6](Filing No. 6), is denied, and the temporary restraining order currently in place is dismissed.

Dated this 6th day of February 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge